Case No. 11-30756

---

In The United States Court of Appeals
for the Fifth Circuit

---

ST. JOSEPH ABBEY; MARK COUDRAIN.

Plaintiffs - Appellees

versus

PAUL WES CASTILLE; BELVA M. PICHON; CRAIG G. GILL; ANDREW HAYES; WALL
V. MCKNEELY; MARGARET SHEHEE; KELLY RUSH WILLIAMS; LOUIS
CHARBONNET, in their official capacities as Members of the Louisiana State Board of
Embalmers and Funeral Directors; PATRICK H. SANDERS, in his official capacity in place
of Oscar A. Rollins (deceased).

Defendants - Appellants

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF LOUISIANA
USDC No. 2:10-CV-2717
THE HONORABLE STANWOOD R. DUVAL, JR. PRESIDING

---

ORIGINAL BRIEF OF APPELLANTS

---

ATTORNEYS FOR DEFENDANTS - APPELLANTS

---

Walter R. Woodruff, Jr., La. 25305
1350 Park Drive
Mandeville, Louisiana 70470
LEAD COUNSEL

David W. Gruning, La. 1390
526 Pine St. Suite 418
New Orleans, Louisiana 70118

Michael H. Rasch, La. 11118
George B. Recile, La. 11414
Preston L. Hayes, La. 29898
CHEHARDY, SHERMAN, ELLIS,
MURRAY, RECILE, GRIFFITH,
STAKELUM & HAYES
One Galleria Blvd. Suite 1100
Metairie, Louisiana 70001

ORAL ARGUMENT REQUESTED.

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in Fed R. App. P. 28 (a)(1) and 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Honorable Judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs/Appellees:**

    (1) Saint Joseph Abbey

    (2) Mark Coudrain

**Attorneys for Plaintiffs/Appellees:**

    (1) F. Evans Schmidt

    (2) Darpana M. Sheth

    (3) Jeff Rowes

    (4) Scott Bullock

    (5) William H. Mellor

**Defendants/Appellants, each in his/her capacity as a Member of the Louisiana State Board of Embalmers and Funeral Directors:**

    (1) Paul "Wes" Castille

    (2) Oscar A. Rollins (now deceased)

(3) Patrick H. Sanders (who replaced Oscar A. Rollins after his death during these proceedings).

(4) Belva M. Pichon

(5) Craig G. Gill

(6) Andrew Hayes

(7) Wall V. McKneely

(8) Margaret Shehee

(9) Kelly Rush Williams

(10)    Louis Charbonnet

**Attorneys for Defendants/Appellants:**

(1) Michael H. Rasch

(2) George B. Recile

(3) Preston Lee Hayes

(4) Walter R. Woodruff, Jr.

(5) David W. Gruning

**SO CERTIFIED**, this the 3rd day of November, 2011.

<u>**/s/ Walter R. Woodruff, Jr.**</u>
Walter R. Woodruff, Jr. La. 25305

## STATEMENT REGARDING ORAL ARGUMENT

Because this appeal raises serious and complex issues of Constitutional law, and presents an important issue on which there is a split of authority between other Circuits, its resolution in this Court warrants the interchange afforded only by oral argument.  Accordingly, Appellants maintain that oral argument will materially assist the Court in its decisional process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................ii

STATEMENT REGARDING ORAL ARGUMENT............................................iv

TABLE OF CONTENTS..................................................................................v

TABLE OF AUTHORITIES........................................................................ vi

    I.   STATEMENT OF JURISDICTION ........................................................ 1

    II.  INTRODUCTION...............................................................................2

    III. STATEMENT OF ISSUES PRESENTED FOR REVIEW..........................3

    IV. STATEMENT OF THE CASE................................................................3

    IV. STATEMENT OF FACTS ...................................................................6

    V. SUMMARY OF ARGUMENT...............................................................12

    VI. ARGUMENT....................................................................................14

        A. Standard of Review......................................................................14

        B. Argument and Authorities.............................................................16

        1. "Rational Basis" Test is the Appropriate Scrutiny
            a. Rational Basis is Deferential..........................................16

            b. The District Court reversibly erred in
            Declaring the Act Unconstitutional....................................20

        2. A State has the Power to Order Business and
            Commercial Relationships within it..........................................24

    VII. CONCLUSION.................................................................................30

CERTIFICATE OF SERVICE........................................................................31

CERTIFICATE OF COMPLIANCE WITH RULE 32(a).....................................32

# TABLE OF AUTHORITIES

**Cases**

*American Academy of Pain Management v. Joseph*,
353 F.3d 1099 (9th Cir. 2004)........................................................ 14

*Chamber of Commerce v. Arggenbright*,
226 F.3d 1049 (9th Cir. 2000)........................................................15

*Craigmiles v. Giles*,
312 F.2d 220 (6th Cir. 2002).........................................................27

*Cunningham v. Beavers*,
858 F.2d. 269 (5th Cir. 1988),
*cert. denied*, 489 U.S. 1067 (1989)..................................................19

*Dandridge v. Williams*,
397 U.S. 471, 485 (1970)...........................................................18

*FCC v. Beach Communications, Inc.*,
508 U.S. 307 (1993) ................................................................24

*Fitzgerald v. Racing Assoc. of Cent. Iowa*,
539 U.S. 103 (2003)................................................................11

*Ferguson v. Skrupa*,
372 U.S. 726 (1963)................................................................11

*Haves v. City of Miami*,
52 F.3d 918, (11th Cir. 1995).......................................................16

*Heller v. Doe*, 509 U.S. 312 (1993)..................................................16

*Hitchcock v. Board of Trustees, Cypress-Fairbanks Independent School District*,
232 S.W.3d 208, (Tex. App.- Houston [1st Dist.],2007, *no pet.*)...........20

*Jacobsen v. United States Postal Serv.*,
993 F.2d 649 (9th Cir. 1992)..................................................16

*Lehnhausen v. Lake Shore Auto Parts Co.*,
410 U.S. 356, (1973).........................................................20

*Lochner v. New York*,
198 U.S. 45 (1905)...........................................................27

*M & Z Cab Corporation v. City of Chicago*,
18 F.Supp.2d 941 (N.D. Ill. 1998)............................................18

*Meadows v. Odom*,
360 F.Supp.2d 811 (M.D. La. 2005),
*vacated as moot*, 198 Fed. Appx. 348........................................28

*Neal v. Shimoda*,
131 F.3d 818 (9th Cir. 1997)..................................................16

*Nordlinger v. Hahn*,
505 U.S. 1 (1992)............................................................18

*Plyler v. Doe*,
457 U.S. 202,
*reh. denied*, 458 U.S. 1131(1982)...........................................19

*Powers v. Harris*,  379 F.3d 1208,
(10th Cir. 2004),
*writ denied*, 544 U.S. 920 (2005).........................................14, 24

*Reid v. Rolling Fork Public Utility District*,
854 F.2d 751(5th Cir. 1988).................................................18

*Seagram & Sons, Inc. v. Hostetter*,
384 U.S. 35 (1966)..........................................................21

*Stout v. Grand Prairie Independent School District*,
733 S.W.2d 290 (Tex. App. - Dallas 1987, *writ ref'd n.r.e.*),
*cert. denied,* 485 U.S. 907 (1988)....................................................20

*Tolchin v. Supreme Court of the State of N.J.*,
111 F.3rd 1099 (3rd Cir. 1997),
*cert. denied,* 522 U.S. 977 (1997)...................................................17

*United States v. Carolene Products Co.*,
304 U.S. 144, 154 (1938)...............................................................21

*Vance v. Bradley*,
440 U.S. 93 (1979)..................................................................... 21

*Water Craft Mgmt. LLC v. Mercury Marine*,
457 F.3d 484 (5th Cir. 2006)......................................…................14

*Weinberger v. Salfi*,
422 U.S. 749 (1975)...............................................................…..19

*Western and Southern Life Ins. Co. v. State Bd. Of Equalization of California*,
451 U.S. 648 (1981)..........................................…......................17

*Williamson v. Lee Optical of Oklahoma*,
348 U.S. 483 (1955)............................................................24, 28

**Statutes**

28 U.S.C. § 1291.............................................…......................1

28 U.S.C. § 1331........................................................... 1

28 U.S.C. § 1343.........................................................................1

28 U.S.C. § 2201.........................................................…...............1

42 U.S.C. § 1983.......................................................................1

La. Rev. Stat. § 37:831(37)...............................................*passim*

La. Rev. Stat. §37:831(41).............................................*passim*

La. Rev. Stat. §§ 37:842(A)-(C)..........................................*passim*

## Rules

Fed. R. App. P. 4(a) .....................................................1

Fed. R App. P. 28(a)(4)...................................................1

Fed. R App. P. 28(a)(5)...................................................3

Fed. R App. P. 28(a)(6)...................................................3

Fed. R App. P. 28(a)(7)...................................................6

Fed. R App. P.28(a)(8)....................................................12

Fed. R. App. P. 32(a)(5)..................................................32

Fed. R. App. P. 32(a)(6)..................................................32

Fed. R. App. P. 32(a)(7)..................................................32

## I. STATEMENT OF JURISDICTION.

Appellants set forth the following pursuant to Fed. R App. P. 28(a)(4).

Plaintiffs' filed the underlying civil rights lawsuit under: (i) the Fourteenth Amendment to the United States Constitution; (ii) the Civil Rights Act of 1871, 42 U.S.C. § 1983; and (iii) the Declaratory Judgment Act, 28 U.S.C. § 2201.   The District Court properly exercised subject matter jurisdiction over the proceedings pursuant to 28 U.S.C. §§ 1331 and 1343. (USCA5, p. 17, Doc. # 1).

This Court has jurisdiction over this appeal, pursuant to 28 U.S.C. §1291, as a final judgment was entered by the District Court on July 21, 2011. (USCA5, p. 921, Doc. #98), and an appeal was timely and properly filed in accordance with Fed. R. App. P. 3 and 4(a)(1)(A) on August 15, 2011. (USCA5, p. 929, Doc. #101).

# INTRODUCTION

This case assesses the constitutionality of Louisiana's Embalming and Funeral Directors Act, and asks whether Louisiana's regulatory scheme impermissibly burdens an individual's substantive due process right to engage in the retail sale of caskets without being a licensed funeral director.

In essence, Louisiana's scheme prohibits the selling of caskets by an individual who is not a Louisiana state-licensed funeral director.

After a three-hour bench trial, the District Court held that aspects of the scheme could not be constitutionally enforced.   The District Court incorrectly decided that La. R.S. § 37:831(37) is unconstitutional on its face to the extent that it includes the selling of caskets within the definition of "funeral directing."  Likewise, the District Court erroneously ruled that La. R.S. § 37:831(41) is unconstitutional as applied to the selling of caskets by one who is not a state-licensed funeral director.  Lastly, the District Court incorrectly resolved that generally, La. R.S. §§ 37:842(A)-(C) and the practices of the Board as applied to the plaintiffs are unconstitutional as applied. Defendants/Appellants have appealed the District Court's judgment.

The District Court's judgment in all respects was error, and must be reversed.

## II. STATEMENT OF ISSUES PRESENTED FOR REVIEW.

Appellants set forth the following pursuant to Fed. R App. P. 28(a)(5).

1. Whether the State of Louisiana may require that any retail seller of a casket be a licensed funeral director?

2. Whether the State's requirement that any seller of a casket be a licensed funeral director is inconsistent with any person's protection under the Fourteenth Amendment to the Constitution of the United States either to due process of law or to equal protection of the laws of the State, because that requirement does not bear a rational relationship to any permissible interest of the State?

3. Whether economic protectionism, standing alone, constitutes a legitimate governmental interest?

## III. STATEMENT OF THE CASE.

Appellants set forth the following pursuant to Fed. R App. P. 28(a)(6).

### A. Course of Proceedings and Disposition Below.

On August 12, 2010, the Saint Joseph Abbey and Mark Coudrain (collectively "the Abbey") filed the underlying civil rights complaint against nine individuals in their capacities as Members of the Louisiana

State Board of Embalmers and Funeral Directors ("the Board"). (USCA5, p. 16, Doc. #1).  In its suit, the Abbey sought declaratory and injunctive relief against the enforcement of Louisiana'a Embalming and Funeral Directors Act, La. Rev. Stat. Ann. 37:831, *et seq.*, (the "Act"), asserting that the statute denied them the right to make and retail caskets to the Louisiana public.   The Abbey challenged the statute on claimed violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

On September 14, 2010, the Abbey filed a Motion for Preliminary Injunction, requesting, *inter alia*, that the District Court enjoin the individual funeral-director licensure provisions of La. Rev. Stat. Ann. § 37:842.  (USCA5, p. 127, Doc. #22).

On October 15, 2010, the Board answered the Abbey's complaint, defending the State of Louisiana's legitimate interest in the regulation of the funeral profession, and maintaining that the challenged regulations were rationally related to that interest.  (USCA5, p. 188, Doc. #28).  On that same date, the Board filed its response opposing the Abbey's Motion for Preliminary Injunction. (USCA5, p. 203, Doc. #29).

The matter was tried before the Honorable Stanwood R. Duval, Jr. on June 6, 2011. (Minute Entry for Proceedings - USCA5, p.692, Doc. #89) ; (Transcript of Hearing - USCA5, p. 695, Doc. #90).

The Judgment of the District Court reads:

> "1. La. Rev. Stat. § 37:831(37) is unconstitutional on its fact [sic] to the extent that it includes the selling of caskets within the definition of "funeral directing";

> "2. La. Rev. Stat. § 37:831(41) is unconstitutional as applied to the selling of caskets and [sic] by one who is not a state-licensed funeral director";

> "3. La. Rev. Stat. §§ 37:842(A)-(C) and the practices of the State Board as applied to Plaintiffs are unconstitutional."

(USCA5 921, Doc. #98).

The District Court's "Findings of Fact and Conclusions of Law" must be consulted in order to learn that the District Court ruled that these statutes were unconstitutional for the following reasons:

> "Thus, Plaintiffs have demonstrated that there is no rational relationship between requiring persons selling caskets to become funeral directors and to sell caskets only from funeral establishments thus violating Plaintiffs' constitution (sic) rights to Due Process. The provisions of the Act as they relate to the retail sale of caskets by persons other than funeral directors do not protect consumers; the prohibition against Plaintiffs' selling caskets does not protect the public health and welfare. The provisions simply protect a well-organized industry that seeks to maintain a strict hold on this business.

> "Likewise these laws violate of the Equal Protection Clause, since the Act in essence treats two distinct and different occupations as the same. The licensing scheme is not rationally related to public health and safety concerns. No other state in the Union continues this

practice; it is detrimental to the welfare of the consumers and does not protect the health and safety of the public."
(USCA5 918-19, Doc. # 97).

The Board and the Abbey each submitted post-trial memoranda. (USCA5, p. 830, Doc. # 92 and USCA5, p. 845, Doc. # 93 respectively). On July 21, 2011, the District Court filed its Findings of Fact and Conclusions of Law. (USCA5, p. 901, Doc. #97). On that same date, the District Court entered final judgment in favor of the Abbey and against the Board. (USCA5, p.921, Doc. #98). The Board timely filed its notice of appeal on August 15, 2011. (USCA5, p.929, Doc. #101).

## IV.  STATEMENT OF FACTS.

Appellants set forth the following pursuant to Fed. R App. P. 28(a)(7).

Defendants/Appellants are individuals who sit on the Louisiana Board of Embalmers and Funeral Directors ("the Board"). The Board is a licensing and regulatory agency which is authorized and empowered under the provisions of La. Rev. Stat. 37:831, *et seq.* to regulate funeral service professionals and funeral homes.  Louisiana's Embalming and Funeral Directors Act includes the selling of caskets within the

definition of "funeral directing." The Act's regulatory scheme requires that individuals be state-licensed funeral directors in order to engage in the retail sale of caskets. Moreover, a licensed funeral director is allowed to retail caskets only at a state-licensed funeral establishment. The Board is empowered to take appropriate actions against anyone who fails to adhere to Louisiana's rules regulating the business of funeral directing.

Pertinent to this case and appeal, the Act includes, *inter alia,* the following challenged provisions:

"Funeral directing" means the operation of a funeral home, or, by way of illustration and not limitation, any service whatsoever connected with the management of funerals, or the supervision of hearses or funeral cars, the purchase of caskets or other funeral merchandise, and retail sale and display thereof, the cleaning or dressing of dead human bodies for burial, and the performance or supervision of any service or act connected with the management of funerals from time of death until the body or bodies are delivered to the cemetery, crematory, or other agent for the purpose of disposition. La. Rev. Stat. § 37:831(37).

*** *** ***

"Funeral merchandise" means: caskets, rental caskets, rental casket inserts, alternative containers, combo/shipping caskets, and other receptacles, excluding urns, where human remains are directly placed for disposition. La. Rev. Stat. § 37:831(41).

*** *** ***

A. Any applicant shall be qualified for license as funeral director if he:

(1) Is twenty-one years of age or at least eighteen years of age and legally emancipated.

(2) Is found by the board to be of good moral character and temperate habits.

(3)(a) Has successfully completed thirty semester hours in an accredited college or university, as recognized by the board and evidenced by a transcript of credits from such college or university.

(b) Any intern duly registered with the board shall be required to have completed thirty semester hours in an accredited college or university, as recognized by the board and evidenced by a certified transcript of credits from such college or university.

(4) Has served as an apprentice for a period of not less than one year in the State of Louisiana.

(5) Has paid the application fee required by R.S. 37:845.

(6) Passes satisfactorily an examination conducted by the board to practice the profession of funeral directing as defined in R.S. 37:831.

B. Any applicant shall be qualified for license as an embalmer and funeral director if he:

(1) Meets foregoing requirements (1), (2), (4) and (5) for funeral directors.

(2) Is a graduate of a high school as evidenced by a diploma.

(3) Has successfully completed a full course of not less than fifteen full months in the science of embalming at an accredited school of mortuary science or funeral service recognized by the board.

(4) Passes satisfactorily an examination conducted by the board to practice the science of embalming as defined in R.S. 37:831.

C. Any applicant is qualified for license as an embalmer or funeral director in this state, if he:

(1) Holds a valid license in full force and effect from another state or a provincial authority recognized by this board and by the Conference of Funeral Service Examining Boards, and furnishes such license, or a certified copy thereof, to the board, together with the certificate of the licensing authority of such state or province, certifying to the examination of such applicant and giving the percentage made in such examination, and his place of residence at the time of the examination.

(2) Furnishes to the board an affidavit or affidavits of two responsible persons showing that applicant had not ceased his practice of the science of embalming or the profession of funeral directing, as the case may be, for more than one year prior to making application to the board for license in Louisiana.

(3) Provides the board with evidence showing that he was then, and had been for at least three months, engaged in the science of embalming or the profession of funeral directing within the State of Louisiana.

(4) Has paid with his application fee required by R.S. 37:845.

(5) Is found by the board to be a person of good moral character and temperate habits, and to otherwise meet the requirements of this chapter.

La. Rev. Stat. § 37:842(A)-(C).

Plaintiffs are subject to the Act as sellers of caskets. Saint Joseph Abbey is a Catholic monastery with 38 monks located in Covington, Louisiana, and Mark Coudrain is an employee of the Abbey. (USCA5,

pp. 708-09, 719, Doc. #90). Wanting to sell wooden caskets without achieving compliance with the foregoing provisions, Plaintiffs brought underlying action seeking declaratory and injunctive relief pursuant to the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. (USCA5, p. 16, Doc. #1). Defendants object that Louisiana law is clear, and in order to sell caskets to consumers in the retail market the Abbey would first have to become a licensed funeral establishment (USCA5, pp. 747-48, Doc. #90), have to employ a full-time, state-licensed funeral director (USCA5, p. 748, Doc. #90), and would have to install "embalming facilities for the sanitation, disinfection and preparation of a human body." La. Rev. Stat. § 37:842(D)(3). Defendants do not deny and have never denied that the Plaintiffs may engage in the wholesale sale of caskets.

Throughout the proceedings, Defendants have maintained that the Act serves the legitimate governmental interest of protecting consumers and the health, safety and welfare of Louisiana's citizens. (USCA5, p. 494, Doc. #73). Moreover, Defendants maintain that neither they nor the State of Louisiana is obligated to prove that the Act is rationally related to a particular legitimate State interest,

although they have done so. Instead, the Act benefits from a presumption of constitutionality, as established by the decisions of the Supreme Court of the United States. *(See infra)*. Defendants further contend that, consistent with apposite holdings from the Supreme Court, intrastate economic protectionism is a legitimate state interest. *See Fitzgerald v. Racing Assoc. of Cent. Iowa*, 539 U.S. 103, 109 (2003) (holding that the Equal Protection Clause does not prohibit Iowa's differential tax rate favoring the intrastate racetrack over the intrastate riverboat gambling industry); and *Ferguson v. Skrupa*, 372 U.S. 726, 732-33 (1963) ("If the State of Kansas wants to limit debt adjusting to lawyers, the Equal Protection Clause does not forbid it.").

The matter was tried to the bench and the District Court rejected, out of hand, the notion that economic protectionism is a legitimate governmental interest in the context of retail casket sales. (USCA5, p.911, Doc. #97). Focusing on whether there exists a rational relationship between consumer protection and/or public health and safety and the relevant provisions of the Act, the District Court ruled that such a relationship was not supported by the evidence. (USCA5, p. 912, Doc. #90). In making its determination, the District Court

referenced four "salient facts" concerning Louisiana law and burials: (1)

there is no requirement to use a casket, container, or other enclosure for

the burial of human remains; (2) there are no requirements for the

construction or design of caskets; (3) there is no requirement for caskets

to be sealed; and (4) individuals may construct and use their own

handmade casket for a funeral in Louisiana. (USCA5, p. 909). In the

end, the District Court concluded that plaintiffs had demonstrated that

there is no rational relationship between requiring persons selling

caskets to become funeral directors and to sell caskets only from funeral

establishments. (USCA5, p. 918, Doc. # 97). Thus, the District Court

held that the Act protected neither consumers nor the public health and

welfare. Consequently, the Court decided that the Act violated

plaintiffs' constitutional right to Due Process and Equal Protection.

(USCA5, p. 918, Doc. #97).


## V. SUMMARY OF ARGUMENT.

Appellants set forth the following pursuant to Fed. R App. P. 28(a)(8).

The Constitution does not forbid Louisiana from limiting the retail

sale of caskets to licensed funeral directors. Louisiana's Embalming

and Funeral Directors Act bears a rational relationship to legitimate public ends - consumer protection and public health and safety concerns - and survives constitutional challenge.

Here, the record plainly establishes that the Act serves to protect Louisiana consumers, a legitimate public concern, from, *inter alia,* improper and overreaching sales tactics in the area of "at need" casket sales and does, in fact serve such ends.  Moreover, given Louisiana's unique burial considerations, the Act's licensing requirement serves to ensure that knowledgeable decisions, mindful of Louisiana's unique situation, are made relative to casket sales.  A Court may not strike down a law as irrational simply because it does not achieve the result it aims to accomplish.  Thus, while Louisiana's Act may not be "perfect," that is not a bar that the Act has to clear.  It is enough to survive plaintiffs' constitutional challenge because it does meet rational basis scrutiny.  Accordingly, because the District Court was incorrect to hold otherwise, this Court should reverse the District Court as to both Appellees' equal protection and due process challenges.

Although plaintiffs have pointed out that the Act has the incidental consequence of "economic protectionism," such a consequence

does not render Louisiana's statutory scheme constitutionally infirm.

In fact, recent and apposite jurisprudence from the Tenth Circuit,

decided on nearly identical facts, has faithfully, and correctly,

interpreted time-tested Supreme Court precedent to hold that

"intrastate economic protectionism constitutes a legitimate state

interest." *Powers v. Harris*, 379 F.3d 1208, 1221 (10th Cir. 2004), *writ

denied*, 544 U.S. 920 (2005).

## VI. ARGUMENT

Appellants set forth the following pursuant to Fed. R App. P. 28(a)(9).

### A. Standard of Review

The Fifth Circuit reviews a district court's factual findings after a

bench trial for clear error and its legal conclusions *de novo. Water Craft

Mgmt. LLC v. Mercury Marine,* 457 F.3d 484, 488 (5th Cir. 2006).

The District Court ruled that several Louisiana statutes violate the

Constitution of the United States. (USCA5, p. 919, Doc. #97) (La. Rev.

Stat. 37:831 (37 & 41); 842(A)-(C)).  A Federal Court of Appeals reviews

such a ruling *de novo.  American Academy of Pain Management v.*

*Joseph*, 353 F.3d 1099, 1103 (9th Cir. 2004). *Chamber of Commerce v. Argenbright,* 226 F.3d 1049, 1054 (9th Cir.2000).

A District Court's conclusions of law are also reviewed *de novo*. Here, the District Court, however, in its Findings of Fact and Conclusions of Law stated: "To the extent a finding of fact constitutes a conclusion of law, the Court adopts it as such. To the extent a conclusion of law constitutes a finding of fact, the Court adopts it as such." (UCSA5, p. 901, Doc. #97). To the extent that the District Court has converted findings of fact into conclusions of law, then the proper standard of review of such deemed conclusions of law should likewise be *de novo*. If the District Court has made it impossible to distinguish between its findings of fact and conclusions of law, Appellants should not be disadvantaged by that fact and should be entitled to *de novo* review of the District Court's decision in its entirety.

Conversely, the District Court does not have the power to convert its conclusions of law into findings of fact, thus insulating them from *de novo* review under the clear error standard of review. In other Circuits, a district court's determinations of "mixed questions of law and fact that

15.

implicate constitutional rights" are likewise reviewed *de novo. Neal v. Shimoda,* 131 F.3d 818, 823 (9th Cir.1997); *Jacobsen v. United States Postal Serv.,* 993 F.2d 649, 653 (9th Cir.1992).

### B. Argument and Authorities

### 1. THE "RATIONAL BASIS" TEST IS THE APPROPRIATE SCRUTINY BY WHICH TO DETERMINE THE CONSTITUTIONALITY OF LOUISIANA'S EMBALMING AND FUNERAL DIRECTORS ACT.

   **a. Rational basis scrutiny is deferential, and the challenged law should be upheld if any purpose for the classification can be conceived.**

"The first step in determining whether legislation survives rational basis scrutiny [under the Equal Protection Clause] is identifying a legislative government purpose . . . which the enacting governmental body could have been pursuing." *Haves v. City of Miami,* 52 F.3d 918, 922-23 (11th Cir. 1995). "The second step . . . asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose." *Id.*

Legislation analyzed under the rational basis test is given great deference, and presumed to be reasonable. *Heller v. Doe,* 509 U.S. 312, 320 (1993). The reasons given for the classes need not be provided by

the government, and the reasons for upholding the classifications can be different than those that motivated its enactment. *Id.* Because all legislation classifies its objects, differential treatment is justified by "any reasonably conceivable state of facts." *Id.* Moreover, "the Equal Protection Clause is satisfied if . . . [the governing body] *could have believed"* that the enacted law would promote its objective. *Western and Southern Life Ins. Co. v. State Bd. Of Equalization of California,* 451 U.S. 648, 672 (1981).

Moreover, the legislation need not be the least restrictive means of achieving permissible end. *Tolchin v. Supreme Court of the State of N.J.,* 111 F.3rd 1099, 1114 (3rd Cir. 1997), *cert. denied,* 522 U.S. 977 (1997). The legislation does not have to be fair or as even-handed as possible. Nor must it be effective. "But whether *in fact* the provision will accomplish its objectives is not the question: the Equal Protection Clause is satisfied if we conclude that the California Legislature *rationally could have believed* that the retaliatory tax would promote its objective." *Western and Southern Life Ins. Co. v. State Bd. Of Equalization of California,* 451 U.S. at 672-73 (per Brennan, J.).

17.

Regulatory classifications do not violate the Equal Protection Clause merely because the classifications are imperfect. *Dandridge v. Williams,* 397 U.S. 471, 485 (1970). "If the classification has some 'reasonable basis', it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Id.* at 485.

The Equal Protection Clause does not demand for purposes of a rational basis review that the legislature or governing decision maker actually articulate at any time the purpose or rationale supporting its decision, but only that a court's review can find a conceivable purpose. *Nordlinger v. Hahn,* 505 U.S. 1, 15 (1992). *See also Reid v. Rolling Fork Public Utility District,* 854 F.2d 751, 754 (5th Cir. 1988). "When, as here, the equal protection challenge does not involve a suspect class or a fundamental right, the appropriate standard of review is the rational basis test. Under this standard, the party challenging the rationality of legislative choices must establish that no conceivable basis exists for the regulation. "The challenged legislation satisfies the rational basis test so long as it does not manifest 'a patently arbitrary classification, utterly lacking in rational justification.'" *M & Z Cab Corporation v. City*

*of Chicago,* 18 F.Supp.2d 941, 950 (N.D. Ill. 1998), citing *Weinberger v. Salfi*, 422 U.S. 749, 768 (1975).

Almost all laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike. *Nordlinger v. Hahn*, 505 U.S. at 8-10. A legislature must have substantial latitude to establish classifications when it attempts to remedy a perceived problem. *Cunningham v. Beavers*, 858 F.2d. 269, 272 (5th Cir. 1988), *cert. denied,* 489 U.S. 1067 (1989), *quoting Plyler v. Doe*, 457 U.S. 202, 217, *reh. denied*, 458 U.S. 1131 (1982). The Equal Protection Clause is not violated "merely because the classifications made . . . are imperfect." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997), *cert. denied,* 522 U.S. 995 (1997), quoting *Dandridge v. Williams*, 397 U.S. at 485. Unless the classification created by the regulatory scheme infringes upon fundamental rights or burdens an inherently suspect class, the standard under which equal protection claims are reviewed is "whether the establishment of disparate treatment for different classes is rationally related to goals the legislature sought to achieve by enacting

the legislation." *Hitchcock v. Board of Trustees, Cypress-Fairbanks Independent School District*, 232 S.W.3d 208, 217-218 (Tex. App.-Houston [1st Dist.], 2007, *no pet.*), *quoting Stout v. Grand Prairie Independent School District*, 733 S.W.2d 290, 295 (Tex. App. - Dallas 1987, *writ ref'd n.r.e.*), *cert. denied,* 485 U.S. 907 (1988).

**b. The District Court reversibly erred in declaring the Act unconstitutional without first requiring the Abbey to "Negative" the consumer protection and general safety and welfare rationales suggested by the Board.**

The District Court misinterpreted the law inasmuch as it allowed plaintiffs to prevail on their challenge, without requiring them to have "negatived" the proffered rationales of consumer protection and general safety and welfare rationales suggested by defendants.  This is so regardless of whether the Louisiana legislature may have actually considered those rationales.  *Heller v. Doe*, 509 U.S. 312, 320, (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, (1973).

Here, nothing in the record stands against the possibility that the Louisiana legislature could have rationally determined that keeping the sale of caskets in the hands of licensed funeral professionals would

20.

benefit the public by ensuring competence in casket sales and by providing a regulatory mechanism that would police inappropriate sales tactics. Similarly, no record evidence exists to counter the possibility that the unique situational realities attendant to burials in Louisiana motivated the Louisiana legislature. Importantly, defendants are not required to make a definitive demonstration as to the legislative motivations. A law cannot be struck down as irrational simply because it may not succeed in bringing about the result it seeks to accomplish. *Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 50 (1966). More than that, a statute cannot be overturned on the basis that no empirical evidence supports the assumptions underlying the legislative choice. *Vance v. Bradley*, 440 U.S. 93, 110-11, (1979).

In fact, sworn testimony, elicited on cross-examination from the Abbey's witnesses demonstrates the viability of the Board's proffered legitimate interests motivating the Louisiana legislature's enactment. (*See generally*, USCA5, 715-717, and 728-38). Both Abbot Justin Brown and Deacon Mark Coudrain testified as to their preference and the advisability of consulting a licensed funeral director when selling caskets. This was based on the legitimate concerns of multiple burials

in tombs and body decomposition.  This testimony caused the District Court to press plaintiff's counsel, "I want you to tell me why they [the Board] don't have a rational basis for some of the things your own witnesses have said." (USCA5, p. 743).  Nothing that occurred during the balance of the hearing succeeded in meeting that challenge.

Based on the foregoing, it was error for the District Court to invalidate the Act based on little more than questions and disagreement as to Louisiana's exercise of legislative judgment.  The proper application of the rational basis review instructs that the decision of the Louisiana legislature must be upheld if "any state of facts either known or which could reasonably be assumed affords support for it."  *United States v. Carolene Products Co.*, 304 U.S. 144, 154 (1938) (applying rational basis analysis to Federal legislation based on the Commerce Clause).  Because the licensure requirements are rationally related to a legitimate interest, even an assumed one, they survive rational basis scrutiny.  The record establishes that Plaintiffs have not fully "negatived" every plausible legitimate state interest that could have motivated the Louisiana legislature to enact its regulatory scheme.  Here, numerous legitimate state interests exist to protect the intrastate

funeral home industry.  Defendants have consistently argued that the

Act represents the Louisiana legislature's rational desire to protect vital

consumer related interests and general concerns of public safety and

welfare.  Often, people in the market to purchase a casket are at their

most vulnerable.  Additionally, many families in Louisiana, unlike the

rest of our nation, choose to reuse burial space.  Many family tombs,

crypts, and vaults are over one hundred years old.  Accordingly, the

purchase of a casket is usually a complicated transaction in Louisiana.

Given the number, and the complexity of the concerns surrounding

casket purchases in Louisiana, the legislature has decided that a

licensed funeral director is in the best position to assist the Louisiana

consumer with the purchase of a casket.  Plaintiffs have not proved the

irrationality of these legitimate concerns, hence, Louisiana's

requirement that anyone who sells caskets at retail within its borders

must be a licensed funeral director passes constitutional muster.  In

fact, it will be recalled that testimony elicited from Abbot Justin Brown,

the head of Saint Joseph Abbey, confirmed the rationality of consulting

with a funeral director for purposes of inquiring into the suitability and

appropriateness of casket to the need of the purchaser.  (USCA5, pp.

716-718).

As Supreme Court jurisprudence teaches, the wisdom of the

State's determination is simply irrelevant in rationality review.  *See*

*FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993) ("[E]qual

protection analysis is not a license for courts to judge the wisdom,

fairness, or logic of legislative choices.").

As the Supreme Court's admonition in *Williamson v. Lee Optical*

*of Oklahoma*, 348 U.S. 483, 487 (1955), succinctly instructs:

[A] law may exact a needless, wasteful requirement in many cases. But
it is for the legislature, not the courts, to balance the advantages and
disadvantages of the new requirement.... The day is gone when this
Court uses the ... Fourteenth Amendment to strike down state laws, ...,
because they may be unwise ... "For protection against abuses by
legislatures the people must resort to the polls, not the courts."


**2.    A STATE HAS THE POWER TO ORDER BUSINESS AND
COMMERCIAL RELATIONSHIPS WITHIN IT; EVEN IF THE
STATE'S ONLY PURPOSE IS TO PROTECT ONE SEGMENT OF A
MARKET, THIS IS A LEGITIMATE STATE INTEREST.**


The District Court based its ruling against the Board on the

ground that the only reason for the statutes and practices at issue here

was the protection of funeral directors against one possible set of competitors, casket sellers who do not qualify as funeral directors. As shown above, the protection of one segment of the market was not the sole purpose of the statutes and practices at issue here. The Board has shown this to be the case, despite the fact that it is not the Board's burden to show such non-protectionist purposes. Rather, the burden is on those who challenge the constitutionality of the State statutes and practices to defeat the presumption that supports them. This the Abbey has not done.

But it is clear that even if the protection of an industry or one segment of a market was the legislature's purpose, this simply does not mean that the statute automatically violates the due process and equal protection guarantees of the Fourteenth Amendment. In *Powers v. Harris*, 379 F.3d 1208 (10th Cir. (Okla.) 2004), as noted above, the Court had before it a statute very similar to the one at issue here. The Tenth Circuit ruled squarely that "intra-state economic protectionism, ... is a legitimate state interest." In order for a challenger of such a legitimately protectionist economic regime to prove it unconstitutional, it would be necessary to show that the regulatory or statutory scheme

was "a violation of a specific federal statutory or constitutional provision." *Powers v. Harris*, at 1222. The Oklahoma Funeral Services Licensing Act did not run afoul of any specific Federal statute or of any specific provision of the Constitution of the United States. The Tenth Circuit first reasoned that the challengers there could not show that the Oklahoma scheme violated any rule promulgate by the Federal Trade Commission.  *Id.* at 1222. Because the Oklahoma Act did no more than "protect[ ] the intrastate funeral-home industry, the fit between the means and the end was therefore narrowly or well "tailored." Hence, the Court's "inquiry [was] at an end." *Id.* at 1223.

The Tenth Circuit in *Powers* was not politically naive about the way that such protectionist statutory schemes might occur.

> "We also note, in passing, that while baseball may be the national pastime of the citizenry, dishing out special economic benefits to certain in-state industries remains the favored pastime of state and local governments. While this case does not directly challenge the ability of states to provide business-specific economic incentives, adopting a rule against the legitimacy of intrastate economic protectionism and applying it in a principled manner would have wide-ranging consequences. *See Vieth v. Jubelirer,* 541 U.S. 267, 124 S.Ct. 1769, 1776-77, 158 L.Ed.2d 546 (2004) ( "[J]udicial action must be governed by standard, by rule. Laws promulgated by [legislatures] can be inconsistent, illogical, and ad hoc; law pronounced by the courts must be principled, rational, and based upon reasoned distinctions."). Thus, besides the threat to all licensed professions

such as doctors, teachers, accountants, plumbers, electricians, and lawyers, *see, e.g.,* Oklahoma Statutes, title 59 (listing over fifty licensed professions), every piece of legislation in six states aiming to protect or favor one industry or business over another in the hopes of luring jobs to that state would be in danger. While the creation of such a libertarian paradise may be a worthy goal, Plaintiffs must turn to the Oklahoma electorate for its institution, not us.

*Powers v. Harris*, at 1221-22 (footnote omitted).

Thus, the problem, if there is one, is not limited to just this occupation or profession. Law, medicine, pharmacy, and in Louisiana as in Oklahoma, numerous other professions and occupations would have to be found unconstitutional as well. The *Powers* Court frankly acknowledged that such a revolutionary change, even if desirable, was one that courts are not institutionally situated to make. Instead, the State political process is the proper forum for the change, or changes, to be made.

The Tenth Circuit in *Powers v. Harris* had before it the earlier example of the Sixth Circuit's decision in *Craigmiles v Giles*, 312 F.3d 220 (C.A.6 (Tenn.) 2002). The statute in Tennessee, like the statute in Oklahoma, required that only funeral directors could sell caskets to retail buyers. *Craigmiles* ruled that the Tennessee statute violated Fourteenth Amendment due process and equal protection. *Id.* at 229-30.

The Sixth Circuit attempted to distinguish its holding from that of

*Lochner v. New York,* 198 U.S. 45 (1905), but failed in the effort.  To

hold, as *Craigmiles* did, that a State could <u>not</u> legislate so as to protect

one group of participants in a market at the expense of another group is

*precisely* what the Supreme Court majority in *Lochner* held.  In

*Lochner*, it was the bakers versus their employers; in *Craigmiles* (and

*Powers* , and in this case), it is one group of sellers of caskets who may

sell at retail versus another group of sellers of caskets who may only

sell wholesale.

The Tenth Circuit in *Powers v. Harris* suggested, almost certainly

thinking of the decision in *Craigmiles*, that a few courts had given in to

"the Siren's song that has recently induced other courts to strike state

economic legislation," such as that at issue in *Powers*, *Craigmiles*, and

here.  *Powers* found that *Williamson v. Lee Optical* "so closely mirrors

the facts" in *Powers* that "merely a citation to *Williamson* would have

sufficed to dispose" of the challenge to the Oklahoma statute in that

case.  *Powers*, at 1221.  The Supreme Court in *Williamson* held that it

could be a legitimate State purpose to "free a profession," such as

optometry and ophthalmology, from "all taints of commercialism" by restricting the right of opticians to compete with them.

It is noteworthy that a District Court within the Fifth Circuit has adopted the rationale advanced by the *Powers* Court. The Middle District of Louisiana has held that another chapter of Title 37, which also includes restrictions on who may exercise the occupation of flower arranging, violates neither the due process clause nor the equal protection clause of the Fourteenth Amendment. *Meadows v Odom*, 360 F.Supp.2d 811 (M.D.La. 2005).

In that case, Judge Polozola thoroughly and carefully analyzed both *Power v. Harris* and *Craigmiles v. Giles*. The challengers there attacked, *inter alia*, the requirement that flower arrangers acquire sufficient knowledge in order to pass a State-administered exam. This requirement, they claimed, violated equal protection and due process because it was not rationally related to any legitimate state interest. Judge Polozola ruled in favor of the statute's constitutionality:

> "The Court finds, based on the long-standing jurisprudence discussed above, that the regulation of the retail florist industry does not violate either the Equal Protection Clause or the Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution under the facts of this case." *Meadows v. Odom*, at 825.

# VII. CONCLUSION

The District Court's judgment should be reversed because Louisiana's Embalming and Funeral Directors Act is rationally related to the legitimate state interests of consumer protection and public safety and welfare.  Moreover, the Act is rationally related to the legitimate state interest of economic protectionism.  Thus, the Act does not offend notions of due process or equal protection, and the District Court erred in holding otherwise.

Respectfully Submitted:

**/s/Walter R. Woodruff, Jr.**
Walter R. Woodruff, Jr.
Louisiana Bar No. 25305

Michael H. Rasch
Louisiana Bar No. 11118

George B. Recile

Preston L. Hayes
Louisiana Bar No. 29898

David W. Gruning
Louisiana Bar No. 1390

**Counsel for Appellants,
Paul Castille, et al.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Original Brief of Appellants has been served electronically *via* the Clerk of Court's ECF filing system this 3rd day of November 2011, to all counsel of record.

**SO CERTIFIED**, this the 3rd day of November, 2011.

<u>/s/Walter R. Woodruff, Jr.</u>
La. Bar Roll #25305

**Counsel for Appellants,**
**Paul Castille, et al.**

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief is less than 14,000 words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the 2010 version of Microsoft Word in 14 point  font of Century.

**SO CERTIFIED**, this the 3rd day of November, 2011.


/s/Walter R. Woodruff, Jr.
La. Bar Roll #25305

**Counsel for Appellants,**
**Paul Castille, et al.**

32.