IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 11-30756

---

ST. JOSEPH ABBEY; MARK COUDRAIN
Plaintiffs-Appellees,

v.

PAUL "WES" CASTILLE; BELVA M. PICHON; CRAIG G. GILL; ANDREW
HAYES; WALL V. MCKNEELY; MARGARET SHEHEE; KELLY RUSH
WILLIAMS; LOUIS CHARBONNET, in their official capacities as Members of
the Louisiana State Board of Embalmers and Funeral Directors; PATRICK H.
SANDERS, in his official capacity in place of Oscar A. Rollins (deceased),
Defendants-Appellants.

---

On Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:10-cv-02717-SRD

---

**AMICUS CURIAE BRIEF ON BEHALF OF THE UNITED STATES
FEDERAL TRADE COMMISSION IN SUPPORT OF NEITHER PARTY**

---

WILLARD K. TOM
General Counsel

JOHN F. DALY
Deputy General Counsel for Litigation

RUTHANNE M. DEUTSCH
Attorney
Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
(202) 326-3677

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTEREST OF THE AMICUS CURIAE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    THE FUNERAL RULE PROTECTS CONSUMERS
        BY PROMOTING CHOICE AND COMPETITION. . . . . . . . . . . . 5

    II.    RESTRAINTS AGAINST THIRD-PARTY CASKET SALES
        SUCH AS THE LEFDA DO NOT FURTHER THE
        INTERESTS PROTECTED BY THE FUNERAL RULE. . . . . . . . . 9

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

COMBINED CERTIFICATIONS

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Casket Royale, Inc. v. Mississippi*,
    124 F. Supp. 2d 434 (S.D. Miss. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Craigmiles v. Giles*,
    110 F. Supp. 2d 658 (E.D. Tenn. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Harry and Bryant Co. v. FTC*,
    726 F.2d 993 (4th Cir.), *cert. denied*, 469 U.S. 820 (1984). . . . . . . . . . . . 2, 5

*Minnesota Rural Health Coop.*,
    FTC File No. 0510199 (Jan. 4, 2011),
    *available at* http://www.ftc.gov/os/caselist/0510199/index.shtm. . . . . . . . . 1

*Pennsylvania Funeral Dirs. Ass'n, Inc. v. FTC*,
    41 F.3d 81 (3d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 8

*Powers v. Harris*,
    2002 U.S. Dist. LEXIS 26939, *aff'd by* 379 F.3d 1208 (10th Cir. 2004). . 10

*Service Corp. Int'l and Alderwoods Grp., Inc*,
    FTC Docket No. C-4174 (Consent Order, Dec. 29, 2006),
    *available at* http://www.ftc.gov/os/caselist/0610156/0610156.shtm. . . . . . . 3


**FEDERAL STATUTES**

Federal Trade Commission Act:

    15 U.S.C. § 45. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

    15 U.S.C. § 46. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**RULES AND REGULATIONS**

16 C.F.R. § 453.1 *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

47 Fed. Reg. 42260 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

53 Fed. Reg. 19864 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

59 Fed. Reg. 1592 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

73 Fed. Reg. 13740 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

**STATE STATUTES**

The Louisiana Embalming and Funeral Directors Act,
     La. Rev. Stat. Ann. § 37:831 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Louisiana Unfair Trade Practices and Consumer Protection Law,
     La. Rev. Stat. Ann. § 51:1401 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**MISCELLANEOUS**

FTC Advisory Opinion to the Hon. Dan Flynn Concerning the Lawful Construction
of the Term "Cash Advance Item" in the FTC's Funeral Rule (July 2005), *at*
http://www.ftc.gov/os/2005/07/050707funeralrulerequest.pdf.. . . . . . . . . . . . . . . 3

FTC Press Release, FTC Sues Two Funeral Homes for Failing to Provide
Price Lists; Undercover Inspections in Eight States Find Violations of FTC's Funeral
Rule (July 21, 2011), *available at*
http://www.ftc.gov/opa/2011/07/funeral.shtm.. . . . . . . . . . . . . . . . . . . . . . . . 2, 3

FTC Press Release, Missouri Funeral Regulators Agree to Settle FTC Antitrust
Charges (Mar. 9, 2007), *available  at*
http://www.ftc.gov/opa/2007/03/missouriboard.shtm. . . . . . . . . . . . . . . . . . . . . 10

FTC Staff Comment to the Hon. Joanne C. Benson Concerning Maryland H.B. 795 Regarding Corporate Ownership of Funeral Homes (Apr. 2004), *available at* http://www.ftc.gov/os/2004/04/0404mdfuneralhomes.pdf. . . . . . . . . . . . . . . . . . . 3

FTC Staff Letter To The Hon. Daphne Campbell, Florida House of Representatives, Concerning Florida House Bill 4103 and the Regulation of Advanced Registered Nurse Practitioners (2011),
*available at* http://www.ftc.gov/os/2011/03/V110004campbell-florida.pdf. . . . . . 1

Improving Health Care: A Dose of Competition: A Report by the Federal Trade Commission and the Department of Justice, Ch. 2, 25-33 (July 2004), *available at* http://www.ftc.gov/reports/healthcare/040723healthcarerpt.pdf. . . . . . . . . . . . . . 1

## INTEREST OF THE AMICUS CURIAE

The Federal Trade Commission ("FTC" or "Commission") is an independent federal law enforcement agency charged with promoting competition and protecting consumer welfare. The Commission enforces the Federal Trade Commission Act ("FTC Act"), which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce. 15 U.S.C. § 45(a). The Commission conducts investigations, issues public reports on competition practices, and engages in competition advocacy. 15 U.S.C. § 46. Pursuant to this statutory mandate, the Commission encourages competition to the maximum extent compatible with other state and federal goals. The Commission has extensive experience assessing the impact of regulation on competition in many regulated professions.[1]

In 1972, the FTC began an investigation of funeral practices. Findings of widespread unfair and deceptive practices led to the promulgation of the Funeral

---

[1] *See, e.g., Minnesota Rural Health Coop.*, FTC File No. 0510199 (Jan. 4, 2011), *available at* http://www.ftc.gov/os/caselist/0510199/index.shtm; FTC Staff Letter To The Hon. Daphne Campbell, Florida House of Representatives, Concerning Florida House Bill 4103 and the Regulation of Advanced Registered Nurse Practitioners (Mar. 22, 2011),
*available at* http://www.ftc.gov/os/2011/03/V110004campbell-florida.pdf; Improving Health Care: A Dose of Competition: A Report by the Federal Trade Commission and the Department of Justice, Ch. 2, 25-33 (July 2004), *available at* http://www.ftc.gov/reports/healthcare/040723healthcarerpt.pdf (competitive impact of regulation on physician services).

Industry Practices Rule ("Rule" or "Funeral Rule"), which took effect on April 30, 1984.[2]  In adopting the Rule, the Commission determined that "existing funeral practices left the consumer vulnerable to unfair and deceptive practices, and that state regulation against deceptive funeral practices was dominated by industry interests." *Harry and Bryant Co.*, 726 F.2d at 996.

The Funeral Rule promotes competition and deters deceptive or unfair practices by mandating that, at the outset of discussions on funeral arrangements, funeral providers disclose itemized prices for funeral goods and services, so consumers have the information they need to comparison shop.  The Rule also prohibits a number of specific misrepresentations that were found to be prevalent in the funeral industry.

In enforcing the Rule, the FTC conducts annual undercover inspections to ensure industry compliance.  Funeral homes found to have significant violations can enter a training program designed to improve compliance.[3]  When appropriate, the

---

[2] 47 Fed. Reg. 42260 (1982).  The Rule was challenged by funeral providers on various grounds and was upheld in *Harry and Bryant Co. v. FTC*, 726 F.2d 993 (4th Cir.), *cert. denied*, 469 U.S. 820 (1984).  The 1994 amendments to the Rule, including a ban on the imposition by funeral providers of casket handling fees for caskets purchased from third parties, were also challenged, and the Final Rule was upheld, in *Pennsylvania Funeral Dirs. Ass'n, Inc. v. FTC*, 41 F.3d 81 (3d Cir. 1994).

[3] *See* Press Release, FTC, FTC Sues Two Funeral Homes for Failing to Provide Price Lists; Undercover Inspections in Eight States Find Violations of FTC's Funeral Rule (July 21, 2011), *available at* http://www.ftc.gov/opa/2011/07/funeral.shtm.

Commission refers enforcement actions against providers to the Department of Justice for filing in federal court.[4]

Beyond enforcement of the Funeral Rule, the Commission monitors activities in the funeral industry that may result in noncompetitive prices or lower quality of services, such as potentially anticompetitive mergers and acquisitions.[5] The FTC has also provided guidance on the proper interpretation of the Funeral Rule,[6] and advocated policies that promote competition in the funeral industry.[7] The FTC's experience with the funeral industry through its promulgation and enforcement of the Funeral Rule and through antitrust investigations of funeral markets gives it unique expertise that may be relevant to the Court.

---

[4] *Id.*

[5] In 2006, for example, the Commission obtained a consent order similarly requiring Service Corporation International, ("SCI") to divest funeral homes and cemeteries in 41 markets in connection with its acquisition of Alderwoods Group, Inc., the second largest funeral home and cemetery chain in the U.S. *SCI*, FTC Docket No. C-4174 (Consent Order, Dec. 29, 2006), *available at* http://www.ftc.gov/os/caselist/0610156/0610156.shtm.

[6] *See, e.g.*, FTC Advisory Opinion to the Hon. Dan Flynn Concerning the Lawful Construction of the Term "Cash Advance Item" in the FTC's Funeral Rule (July 2005),
*available at* http://www.ftc.gov/os/2005/07/050707funeralrulerequest.pdf.

[7] *See, e.g.*, FTC Staff Comment to the Hon. Joanne C. Benson Concerning Maryland H.B. 795 Regarding Corporate Ownership of Funeral Homes (Apr. 2004), *available at* http://www.ftc.gov/os/2004/04/0404mdfuneralhomes.pdf.

## ARGUMENT

_____The Louisiana Embalming and Funeral Directors Act, La. Rev. Stat. Ann. §§ 37:831 *et seq.* ("LEFDA"), subjects  persons engaged solely in the manufacture and sale of caskets within the state of Louisiana to the full panoply of licensing requirements for funeral directors and funeral establishments.  In striking down the LEFDA as unconstitutional, the district court concluded that "the sole reason for these laws is the economic protection of the funeral industry. "   USCA5 at 901.  Taking no position on the constitutional due process and equal protection issues, the Commission files this amicus brief to refute any suggestion that LEFDA's licensing requirements further the purposes of the Funeral Rule.  On the contrary, he restraints on competition imposed by the LEFDA are at odds with the policy goals of both the Funeral Rule and the FTC Act.

The Funeral Rule protects consumers and promotes competition by requiring funeral providers to disclose full information on the pricing of funeral goods and services, and by prohibiting specific misrepresentations.   The Rule does not purport to protect consumers by limiting their choices and restricting competition, but rather promotes consumer choice by demanding the disclosure of detailed price information on funeral goods and services and prohibiting anticompetitive restraints, such as selling only "bundled" funeral packages.  Restraints on casket sales by independent

retailers, such as LEFDA's licensing requirements, do not further the purposes of the Funeral Rule. On the contrary, they insulate funeral directors from the very competition that the Rule seeks to promote.

## I. ___THE FUNERAL RULE PROTECTS CONSUMERS BY PROMOTING CHOICE AND COMPETITION

In explaining the rationale behind the Funeral Rule, the Commission noted that "the purchase of a funeral is the third largest single expenditure many consumers will ever have to make, after a home and a car." 47 Fed. Reg. at 42260. Yet, the Commission recognized, the emotionally-fraught and time-sensitive nature of the purchase posed unique difficulties for consumers; difficulties that were "exacerbated," according to the rulemaking's record evidence, by "several practices used by funeral providers which limit the consumer's ability to make informed, independent choices." *Id.*

Evidence showed, for example, that funeral providers often required consumers to purchase pre-packaged funerals by bundling items together (thereby prohibiting consumers from selecting items separately); frequently misrepresented that certain goods and services, such as embalming or a casket for a direct cremation, were purchases required by law; and often failed to disclose adequate price information. *See Harry and Bryant Co.*, 726 F.2d at 996-97; 47 Fed. Reg. at 42260. Bundling

practices, in particular, often "forced" consumers "to purchase goods and services they did not want." *Pennsylvania Funeral Dirs. Ass'n*, 41 F.3d at 83.

The Funeral Rule addresses these practices by declaring that, in "selling or offering to sell funeral goods or funeral services to the public, it is an unfair or deceptive act or practice for a funeral provider to fail to furnish accurate price information disclosing the cost to the purchaser for each of the specific funeral goods and funeral services used in connection with the disposition of deceased human bodies."[8]  The Rule defines a "funeral provider" as "any person, partnership or corporation that sells or offers to sell funeral goods *and* funeral services to the public." 16 C.F.R. § 453.1(i) (emphasis added).

Pursuant to the Rule, funeral providers must furnish to those who inquire about the funeral provider's offerings a general price list ("GPL") that contains itemized prices for specified goods and services.  16 C.F.R. § 453.2(b)(4).  The Rule recognizes that caskets may be sold by parties other than funeral providers, as the GPL must contain a "separate price for an immediate burial *where the purchaser*

---

[8] 16 C.F.R. § 453.2.  As defined in the Rule, funeral goods are goods "sold or offered for sale directly to the public for use in connection with funeral services," *id.* at § 453.1(h), and can include items, such as flowers or food, that are not associated solely with funerals.  Funeral services are services which may be used to "[c]are for and prepare deceased human bodies for burial, cremation or other final disposition" and "arrange, supervise or conduct the funeral ceremony or the disposition of deceased human bodies." *Id.* at § 453.1(j).

*provides the casket*." 16 C.F.R. § 453.2(b)(D)(1) (emphasis added).[9] The Rule also mandates a specifically-worded disclosure informing the consumer that "[y]ou may choose only the items you desire." 16 C.F.R. § 453.4(b)(2)(i)(A). In short, the Funeral Rule provides consumers with the information they need to freely select funeral goods and services, including caskets from third parties that are not full-service funeral providers.

As mandated in the original Rule, the Commission initiated an amendment process to determine whether the Rule was achieving its purposes of reducing barriers to price competition and increasing consumer choice, and to recommend changes as needed. 53 Fed. Reg. 19864 (1988); *see also* 16 C.F.R. § 453.10; Statement of Basis and Purpose, 47 Fed. Reg. at 42261, 42299. The resulting 1994 amendments added language expressly prohibiting funeral providers from charging casket handling fees when the consumer purchases a casket from a third-party seller. 59 Fed. Reg. 1592 (1994). In barring such fees, the Commission recognized that charges to handle the caskets of independent retailers "frustrate the Rule's basic 'unbundling' requirement

---

[9] Similarly, the GPL must include either a separate price quote for the basic services provided by the funeral director and staff, or a statement that such service fee for use of basic services is provided in the price of the provider's caskets, with the caveat that, if the latter, the service fee "shall be added to the total cost of your funeral arrangements *if you provide the casket.*" *Id.* at § 453.2(b)(4)(iii)(C)(1)-(2) (emphasis added). This caveat would be unnecessary if the Rule did not contemplate casket sales by third parties.

by penalizing consumers who decline caskets sold by the funeral home and instead purchase them from third-party sellers." *Id.* at 1593. The Commission further noted that this express prohibition, although not provided for in the original version of the Rule, was necessary given the (pro-competitive) emergence of third-party casket sellers, and the consequent (anticompetitive) development of casket handling fees – both direct results of the Rule. *Id.*[10]

In upholding the Final Amended Rule, the Third Circuit agreed that consumers were injured by casket handling fees because, if "funeral providers were able to condition consumers' choice on the payment of an additional, non-declinable fee," a consumer's right under the Rule to decline to purchase any item, including a casket, from a funeral service provider, would be rendered "illusory." *Pennsylvania Funeral Dirs. Ass'n*, 41 F.3d at 89 (quoting 59 Fed. Reg. at 1604). Such fees were therefore prohibited, "to encourage consumers to exercise choice in the marketplace, especially with the entrance of third-party competitors, and to prevent funeral homes from effectively prohibiting that choice." 41 F.3d at 90. The 1994 amendments thus reinforced the Rule's original purpose of facilitating consumers' ability to choose not

---

[10] The record evidence indicated that some providers implemented casket handling fees as a "direct response to third-party competition," while others used handling fees "because of their competitive reluctance to shift overhead costs and profit from the casket mark-up to professional services fees." 59 Fed. Reg. at 1604.

only among goods and services offered but to promote competition among providers – including non-funeral providers – of those goods and services.

In 2008, after another rule review proceeding, the Commission declined to expand the Rule's scope to cover third-party sellers of caskets and urns. Simply put, there was no sign of abuses by independent sellers. Although the record evidence indicated significant growth in the number of third-party sellers, the Commission found "insufficient evidence that . . . third-party sellers of funeral goods are engaged in widespread unfair or deceptive acts or practices" to warrant expanding the coverage of the Rule. 73 Fed. Reg. 13740, 13742 (Mar. 14, 2008). Indeed, the Commission expressly noted that the record was "bereft of evidence indicating significant consumer injury caused by third-party sellers." *Id.* at 13745. This was unsurprising, the Commission observed, because "third-party retailers have a strong economic incentive to display their prices to the public at large because offering a lower price is the primary way they compete against funeral providers for sales of funeral goods, such as caskets." *Id.*

## II. RESTRAINTS AGAINST THIRD-PARTY CASKET SALES SUCH AS THE LEFDA DO NOT FURTHER THE INTERESTS PROTECTED BY THE FUNERAL RULE

Recognizing that the best way to protect bereaved consumers from unfair trade practices is by promoting informed choice and reducing barriers to competition, the

Commission consistently has opposed laws that prohibit persons other than licensed funeral directors from selling caskets or urns.  In 2002, the Commission filed an amicus brief in a federal district court in a case contesting a similar limitation in Oklahoma. *Powers v. Harris,* Civ. No. 01-445 (W.D. Okla. filed Aug. 29, 2002), 2002 U.S. Dist. LEXIS 26939, *aff'd by* 379 F.3d 1208 (10th Cir. 2004).  In 2007, the Commission approved a consent decree settling antitrust charges against Missouri funeral regulators, requiring them to affirm that they will not prohibit or discourage the sale or rental of caskets, services, or other funeral merchandise by persons not licensed as funeral directors.[11]

The restraints imposed on free competition by the LEFDA, like previous restrictive state laws opposed by the Commission, cannot be squared with the Funeral Rule's objectives of protecting consumers by facilitating informed consumer choice and promoting competition.  The LEFDA specifies that only state-licensed funeral directors may engage in the retail sale of caskets in Louisiana, and further provides

---

[11] *See* Press Release, FTC, Missouri Funeral Regulators Agree to Settle FTC Antitrust Charges (Mar. 9, 2007), *available at* http://www.ftc.gov/opa/2007/03/missouriboard.shtm.

-10-

that licensed funeral directors are allowed to retail caskets only at a state-licensed funeral establishment. La. Rev. Stat. Ann. §§ 37:831; 37:832(D).[12]

The plaintiffs in this case, the Benedictine monks of St. Joseph Abbey and Mark Coudrain (collectively, "the Abbey"), filed this declaratory action because they seek to sell hand-made monastic caskets to the general public without threat of prosecution or fines. USCA5 at 902. The Abbey is not a licensed funeral establishment, and Mr. Coudrain, an ordained deacon of the Archdiocese of New Orleans and the director of the Abbey's casket-making business, is not a licensed funeral director under Louisiana law. USCA5 at 902, 905-06.

For generations, the monks of the Abbey had constructed simple wooden caskets to bury their own dead. USCA5 at 906. After two bishops were buried in these simple coffins, public interest grew. The Abbey therefore established Saint Joseph Woodworks to construct and sell caskets and generate revenue. *Id.* The Abbey does not arrange or participate in funerals (other than in a pastoral role), and has no intention to handle human remains. *Id.*

---

[12] These restrictions apply only to in-state retailers, not to internet sellers. USCA5 at 909, 913.

To sell caskets in Louisiana, without being subject to the penalties for unlicensed casket sales,[13] the Abbey would have to become a licensed funeral establishment. USCA5 at 907. Licensure would require a layout parlor for 30 people, a display room for six caskets, an arrangement room, and appropriate signage. *Id.* The Abbey would also have to employ a full-time, state-licensed funeral director, and even though it does not intend to handle human remains, in order to sell caskets, it must install "embalming facilities for the sanitation, disinfection, and preparation of a human body." La. Rev. Stat. Ann. § 37:842(D)(3); USCA5 at 906-07. Louisiana does not impose these burdens on out-of-state sellers of caskets to Louisiana consumers. It does, however, impose them on independent casket sellers within the state, even though Louisiana law does not require a casket, container, or other enclosure for burial, and even though people may lawfully make their own caskets. USCA5 at 909.

These restrictions impose additional substantial costs on in-state independent casket vendors beyond those incurred in the manufacture and sale of caskets. If forced to comply with these requirements, some retailers may pass on additional costs to consumers in the form of higher prices. Finding the costs prohibitive, others may

---

[13]  The penalty for each unlicensed casket sale is up to a $2500 fine and 180 days in jail. USCA5 at 907 (citing La. Rev. Stat. Ann. § 37:850). The Abbey's two standard-size caskets, the "monastic" casket, and the "traditional" casket, are priced at $1500 and $2000 respectively.

simply exit the market, depriving consumers of choices and reducing competition. No countervailing benefits appear to justify the imposition of these regulatory costs.[14]

Nor can Louisiana's restrictions on consumer choice be defended under the Funeral Rule. The practical effect of the LEFDA is to limit a consumer's choice of funeral merchandise providers, thereby insulating the funeral service industry in Louisiana from in-state competition. Such restrictions effectively thwart the Funeral Rule's purpose to facilitate informed consumer choice and promote competition, by, *inter alia*, removing obstacles that prevent consumers from purchasing caskets from third-party retailers.

The LEFDA denies Louisiana consumers the benefits of competition that consumers in many other states currently derive from alternative forms of casket retailing. The LEFDA precludes, for example, casket retail stores and the opportunity to purchase from in-state sellers of caskets that are able to cater to particular market niches and offer highly personalized or individually-crafted caskets. Consumers also are deprived of an additional source of price competition for caskets, typically the most expensive of the traditional funeral goods sold by funeral homes.

---

[14] The district court found that the LEFDA's licensing requirements for in-state casket retailers provided neither consumer protection benefits nor health and safety benefits. USCA5 at 913-14; 915-16.

Competition from independent casket vendors benefits consumers in two ways. First, such vendors may provide consumers with lower-price alternatives to the caskets offered by a local funeral home. Second, competition from independent vendors may help constrain the prices charged by local funeral homes, as increasing consumers' purchasing options can pressure funeral directors to offer more competitive prices.[15] In short, independent casket retailers are likely to provide more choices at lower prices – precisely the type of pro-competitive benefit to consumers that the Funeral Rule seeks to promote.

The Commission therefore urges this Court to reject any attempt by Appellants or their amici to invoke the Funeral Rule in defense of restrictions on the very types of competition that the Funeral Rule was intended to promote. In particular, there is no merit to the argument by amicus Louisiana Funeral Directors Association that, because the Funeral Rule does not itself cover independent casket retailers, only licensed funeral directors should be able to sell caskets.

The Funeral Rule is premised on the finding that the failure of a funeral provider to furnish "*accurate price information*" for funeral goods and services is an unfair or

---

[15] Moreover, the requirement that caskets be sold only in state-licensed funeral establishments affects the business practices of licensed funeral directors as well, as it prevents them from selling caskets through a facility that is not a licensed funeral establishment, such as a free-standing showroom or even over the Internet.

deceptive act or practice.     16 C.F.R. § 453.2(a) (emphasis added).  Thus, even if the

Funeral Rule were to extend to third parties who sell funeral goods, it would merely

require them to do what they presumably do already – i.e., provide  consumers with

detailed price and other information about the goods they market.  But "[i]ndependent

retailers do not need to be compelled to disclose prices.  Like any other retailers, if

they fail to disclose their prices they will do no business." *Craigmiles v. Giles*, 110

F. Supp. 2d 658, 663 (E.D. Tenn. 2000); *see also* 73 Fed. Reg. at 13745.

Independent casket sellers, moreover, like other sellers of goods and services,

would be subject to the Louisiana Unfair Trade Practices and Consumer Protection

Law, La. Rev. Stat. Ann. 51:1401 *et seq*., and to full liability under Louisiana tort and

contract law.  Likewise, the Commission has authority under Section 5 of the FTC Act

to bring an enforcement action against a casket seller who makes false or misleading

claims about its products or services, or engages in unfair marketing practices.  15

U.S.C. § 45.

Similarly to the Mississippi funeral statutes struck down in *Casket Royale*, the

LEFDA "'restrict[s] competition and limit[s] casket sales to the licensed few,

accomplishing just the opposite' of protecting the consumer." USCA5 at 912 (quoting

*Casket Royale, Inc. v. Mississippi*, 124 F. Supp. 2d 434, 437 (S.D. Miss. 2000)).

Licensing restrictions such as those imposed by the LEFDA directly thwart the

Funeral Rule's objectives to "lower existing barriers to price competition in the funeral market and to facilitate informed consumer choice." 47 Fed. Reg. at 42260. Accordingly, any suggestion that the LEFDA furthers the goals of the Funeral Rule is erroneous.

## CONCLUSION

For the reasons set forth above, this Court should reject any argument that Louisiana's licensing restrictions on retail casket sales further the purposes of the FTC's Funeral Rule.

Respectfully submitted,

WILLARD K. TOM
General Counsel

JOHN F. DALY
Deputy General Counsel for Litigation

*s/ Ruthanne M. Deutsch*
RUTHANNE M. DEUTSCH
Attorney, DC Bar No. 498091
Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
(202) 326-3677

Dated: December 16, 2011

## <u>COMBINED CERTIFICATIONS</u>

1.      I certify that this brief complies with the type-volume limitations of  Fed. R. App. P. 32(a).  It is proportionally spaced and contains 3,564 words, as counted by the WordPerfect word processing program.

2.      Service upon counsel:  I hereby certify all parties and amici were served by the CM/ECF system, on December 16, 2011.




*s/ Ruthanne M. Deutsch*
RUTHANNE M. DEUTSCH